NOT FOR PUBLICATION         (Docket Nos. 416, 417, 421, 424, 425)

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE**

_____ :
                                :
McKOWAN LOWE & CO., LTD.,        :
                                :
          Plaintiff,            :      Civil No. 94-5522 (RBK)
                                :
     v.                         :      **OPINION**
                                :
JASMINE, LTD., et al.,          :
SNYDER,                         :
                                :
          Defendants.           :
_____ :
                                :
HARRY BERGER, individually      :
and on behalf of a class        :
similarly situated,             :
                                :
                                :      Civil No: 96-2318 (RBK)
          Plaintiff,            :
                                :
     v.                         :
                                :
JASMINE, LTD., et al.,          :
                                :
          Defendants.           :
_____ :


**KUGLER**, United States District Judge:

    This matter comes before the Court on separate motions for
summary judgment by Defendant Arthur Andersen, LLP, ("Andersen"),
Defendants Sands Brothers & Co., Ltd., Steven Sands, Martin
Sands, and Sherman Henderson (collectively, "Sands Defendants"),
Defendants McKowan Lowe & Co., Ltd., Tony Ngai, and Evelyn Wong
(collectively, "McKowan Defendants"), Melvin Twersky and Edward
Maskaly (collectively, "Twersky and Maskaly"), and Thomas Ciocco,

Samuel Mangel, and Irving Mangel (collectively, "Jasmine Defendants"). For the reasons set forth below, Defendants' motions will be granted.

## I.   Background

On June 30, 2005, this Court issued an opinion ("June 30 Opinion") granting partial summary judgment to Andersen and the Sands Defendants for Plaintiffs' failure to establish loss causation. Presently before the court are five separate motions for summary judgment arguing that the absence of loss causation is now the law of the case, entitling Defendants to summary judgment on all claims requiring evidence of proximate cause. As the parties are now intimately familiar with the background and procedural history of this litigation, the facts are not recited at length here except as necessary to aid in understanding this disposition. The Court incorporates by reference the account of undisputed facts in its June 30 Opinion.

In brief, Jasmine, an importer and wholesaler of ladies' shoes and handbags, made an initial public offering (IPO) of Jasmine common stock on December 15, 1993, at $5.50 per share. Prior to the IPO, Jasmine retained Defendant Andersen to audit Jasmine's financial statements for the fiscal year ending in September 30, 1993. Although Andersen's report allegedly contained material misstatements, it was nonetheless included in Jasmine's Registration Statement and Prospectus for the December

2

IPO.

The price of Jasmine stock rose in the weeks following the IPO until February 15, 1994, when Jasmine filed its first-quarter 1994 financial report, reflecting substantially decreased net sales and a significantly higher net loss than the quarter ending December 31, 1992. The value of Jasmine's stock immediately began to decline, ultimately falling to $0.50 per share when last publicly traded on March 22, 1995.

Named plaintiff Harry Berger ("Berger") brought this securities fraud class action on November 27, 1995, against several Defendants including Andersen, Jasmine's auditor who produced the 1993 fiscal year report, the McKowan Defendants (Jasmine's Hong Kong purchasing agent, McKowan Lowe & Co., Ltd., and McKowan directors), the Sands Defendants responsible for underwriting Jasmine's IPO, and several Jasmine executives and directors, including Irving and Samuel Mangel, Twersky, Maskaly, and Ciocco.

After Berger's initial request for class certification was denied, he amended his complaint on July 15, 1999, to include Bernard Cutler ("Cutler") as a second named plaintiff. Cutler successfully moved for certification of the class of all persons who purchased Jasmine common stock from December 15, 1993, through June 20, 1995. The class claims arise under sections 11 and 12(a)(2) of the Securities Act of 1933. Berger and Cutler

both bring independent allegations for violation of section 10(b) of the Securities Exchange Act of 1934 and the New Jersey Uniform Securities Law, and for common law fraudulent and negligent misrepresentation. Berger alone asserts claims under the Illinois Securities Law of 1953 and the Illinois Consumer Fraud and Deceptive Business Practices Act ("Illinois Consumer Fraud Act").

Andersen and the Sands Defendants moved separately for summary judgment in October 2004, and Plaintiff cross-moved for summary judgment on November 12, 2004. In its June 30 Opinion, this Court determined that Defendants were entitled to summary judgment on Plaintiffs' claims under Rule 10b-5, as promulgated under section 10 ("section10/Rule 10b-5"), because the record contained inadequate evidence of loss causation, "a causal connection between the misrepresentation and the investment's subsequent decline in value." Robbins v. Koger Props., Inc., 116 F.3d 1441, 1448 (11th Cir. 1997); Semerenko v. Cendant Corp., 223 F.3d 165 (3d Cir. 2000).

The Court also found that because Defendants "have adduced proof that the Misrepresentations did not cause plaintiffs' losses, 'and plaintiffs have adduced no evidence to the contrary,'" Defendants successfully asserted the lack of loss causation as an affirmative defense against Plaintiffs' section 11 claims. (June 30 Opinion at 29.) The Court further granted summary judgment for Andersen on Plaintiffs' claim of fraudulent

misrepresentation, as Plaintiffs provided no evidence that
Andersen acted with the requisite scienter.

The June 30 Opinion denied Defendants summary judgment on
Plaintiffs' state law claims on the grounds that Defendants made
only a "conclusory argument" that Plaintiffs had failed to offer
a theory of damages, without providing either affirmative
evidence or a demonstration of Plaintiffs' failure to provide
evidence. The Court also denied the Sands Defendants' request for
summary judgment of Plaintiffs' section 12(a)(2) claim. The Court
denied Plaintiffs' motion for summary judgment in its entirety.

Plaintiffs filed a Motion for Clarification on July 11,
2005, and this Court issued an Opinion in response on August 23,
2005. In addressing Plaintiff's request for "clarification as to
how to proceed," the Court explained that its June 30 Opinion:

> addressed only the arguments raised by the parties in
> their cross-motions for summary judgment . . . . It
> expressed no opinion as to arguments that were not
> raised on the papers . . . Thus, this Court denied the
> Sands Defendants' motion for summary judgment as to the
> section 12(a)(2) claim because–and only because–the
> Sands Defendants' papers provided this Court with no
> grounds upon which to do so. This Court denied Andersen
> and the Sands Defendants' motions for summary judgment
> as to the 'remaining state law claims' for–and only
> for–the same reason. . . . If Plaintiffs believe that a
> lack of 'loss causation' . . . would entitle any or all
> of the defendants to summary judgment on any or all of
> the claims remaining in this case, Plaintiffs may file
> an appropriate motion raising that argument. Defendants
> are free to do likewise.

On September 14, 2005, Andersen moved for summary judgment
on all remaining claims against it, specifically Plaintiffs' New

Jersey Securities Act, Illinois Consumer Fraud Act, and negligent misrepresentation claims. The Sands Defendants filed a motion for summary judgment on October 3, 2005, adopting and incorporating the relevant points of Andersen's memorandum of law.[1] The McKowan Defendants did likewise on October 19, 2005,[2] and Melvin Twersky and Edward Maskaly followed suit on November 4, 2005.[3] The Jasmine Defendants (Ciocco and Samuel and Irving Mangel) filed a separate brief and motion for summary judgment on November 15, 2005.[4] There are now five motions for summary judgment outstanding.

Plaintiffs responded to Andersen's motion on October 7, 2005, conceding that the lack of loss causation is now the law of

---

[1] The Sands Defendants request summary judgment on the claims of negligent misrepresentation and New Jersey Securities Act.

[2] The McKowan Defendants request summary judgment on the section 11, section 10/Rule 10b-5, and fraudulent misrepresentation claims, and they also adopt and incorporate Andersen and the Jasmine Defendants' memoranda in support of summary judgment.

[3] Twersky and Maskaly request summary judgment on "plaintiffs' Federal Securities Act claims, and their state and common law misrepresentation claims," and they also adopt and incorporate Andersen's memorandum in support of summary judgment.

[4] Rather than relying on the Andersen memorandum, the Jasmine Defendants file a separate brief in support of summary judgment on the section 10/Rule 10b-5, section 11, Illinois Consumer Fraud Act, Federal Racketeer Influenced and Corrupt Organizations Act (RICO), New Jersey RICO, Negligent misrepresentation, common law fraud, and New Jersey Securities Act claims.

the case, entitling Andersen to summary judgment on Plaintiffs'
claims for negligent misrepresentation and for violation of the
New Jersey Securities Act and Illinois Consumer Fraud Act. In
response to the four motions by other Defendants, Plaintiffs
merely adopt and incorporate their response to Andersen's motion.
Consequently, Plaintiffs have not addressed any issues not raised
by Andersen's motion for summary judgment, leaving unopposed
Defendants' motions for summary judgment on Plaintiffs' claims
under section 10/Rule 10b-5, section 11, fraudulent
misrepresentation, and the Federal and New Jersey RICO statutes.

## II.  Summary Judgment Standard

Summary judgment is appropriate where the Court is satisfied
that "there is no genuine issue as to any material fact and that
the moving party is entitled to a judgment as a matter of law."
Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317,
330 (1986). A genuine issue of material fact exists only if "the
evidence is such that a reasonable jury could find for the
nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242,
248 (1986).

The burden of establishing the nonexistence of a "genuine
issue" is on the party moving for summary judgment. Celotex, 477
U.S. at 330. The moving party may satisfy this burden by either
(1) submitting affirmative evidence that negates an essential
element of the nonmoving party's claim; or (2) demonstrating to

the Court that the nonmoving party's evidence is insufficient to establish an essential element of the nonmoving party's case. Id. at 331. Once the moving party satisfies this initial burden, the nonmoving party "must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). To do so, the nonmoving party must "do more than simply show that there is some metaphysical doubt as to material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).

## III. Analysis

### A. Claims Addressed in the June 30 Opinion

### 1.   Section 10/Rule 10b-5 Claims and Section 11 Claims

Plaintiffs bring section 10/Rule 10b-5 and section 11 claims against all Defendants. In its June 30 Order, this Court granted summary judgment on these claims to Andersen and the Burns Defendants for insufficient evidence of loss causation. The remaining Defendants now move for summary judgment on the same basis. Plaintiffs do not oppose.

Ordinarily, a district court may not grant a motion for summary judgment without examining its merits, solely on the basis that it is unopposed. Stackhouse v. Mazurkiewicz, 951 F.2d 29, 30 (3d Cir. 1991) (citing Anchorage Assoc. v. Virgin Islands Bd. of Tax Rev., 922 F.2d 168 (3d Cir. 1990)); see also Vermont Teddy Bear Co., Inc. v. 1-800 Beargram Co., 373 F.3d 241, 247 (2d Cir. 2004) (collecting cases).

However, this rule is founded on the rationale that a default judgment is too harsh a sanction for the failure to oppose a motion, and the fact that a party's failure to present arguments does not itself eliminate the Court's obligation to make a determination based on the Rule 56 standard. <u>See e.g.</u>, <u>Kinder v. Carson</u>, 127 F.R.D. 543, 546 (S.D. Fla. 1989) ("[T]he granting of summary judgment by default is a disfavored sanction which, in this Court's view, is plainly inconsistent with Rule 56.").

In this instance, however, Plaintiffs have not merely failed to oppose Defendants' motion, they have filed a brief in support of summary judgment for Defendants on certain issues, on the basis of this Court's June 30 Opinion. Consequently, the lack of opposition does not result from mere inattention or neglect by the nonmoving party, and will therefore be treated as a concession of the veracity of Defendants' legal arguments.

Furthermore, there is no reason to believe that the facts of this case would permit Plaintiffs to raise sufficient evidence of loss causation against some Defendants but not others, particularly since Plaintiffs' allegations against all Defendants arise from the same alleged misstatements. Because Plaintiffs here have offered no argument to the contrary, Plaintiffs' failure to provide evidence of loss causation for the purposes of the June 30 Opinion bears equally upon the section 11 and section

10/Rule 10b-5 claims of the remaining Defendants. Summary judgment on Plaintiffs' section 11 and section 10/Rule 10b-5 claims will be granted.

**2.   Fraudulent Misrepresentation Claims**

This Court's June 30 Opinion found that Andersen was entitled to summary judgment on Plaintiffs' fraudulent misrepresentation claim because Plaintiffs did not raise evidence indicating that Andersen acted with the requisite scienter. (June 30 Opinion at 34-35.) All Defendants, except the Sands Defendants, now request summary judgment on Plaintiffs' allegations of fraudulent misrepresentation, on the grounds that Plaintiffs cannot establish proximate cause. Plaintiffs do not oppose Defendants' request for summary judgment on their fraudulent misrepresentation claims.

A prima facie claim of fraudulent misrepresentation requires "(1) [a] representation; (2) which is material to the transaction at hand; (3) made falsely, with knowledge as to whether it is true or false; (4) with the intention of misleading another party into relying on it; (5) justifiable reliance on the misrepresentation; and (6) the resulting injury was proximately caused by the reliance." Richie and Pat Bonvie Stables, Inc. v. Irving, 350 N.J. Super. 579, 589 (App. Div. 2002). Because Plaintiffs concede that proximate cause cannot be established after the June 30 Opinion, (Pl.s' Opp. at 1), they cannot make

10

the requisite showing that their "injury was proximately caused by their reliance on the misstatements." Plaintiffs' inability to establish proximate cause mandates summary judgment on Plaintiffs' common law misrepresentation claims. See, e.g., Joffee v. Lehman Bros., Inc., 2005 WL 1492101, *14 (S.D.N.Y. 2005) ("Plaintiffs have failed to plead loss causation (i.e., proximate cause) with requisite particularity. Absent such allegations of proximate cause, no common law fraud claim can be stated.") (citing Citibank, N.A. v. K-H Corp., 968 F.2d 1489, 1496-97 (2d Cir. 1992)).

Because Plaintiffs common law fraud claims cannot succeed without a finding of loss causation, and for the reasons set forth in III.A.1., above, Defendants' motion for summary judgment will be granted.

**B.   Claims Addressed in Andersen's Motion for Summary Judgment**

**1.   Negligent Misrepresentation**

Andersen, and the other Defendants by incorporation of Andersen's motion, move for summary judgment of Plaintiffs' negligent misrepresentation claim on the basis that "Plaintiffs' fail[ed] to show that 'the alleged misrepresentations proximately caused the decline in the security's value' (June 30 Op. At 19)." (Andersen Mot. Summ. J. at 6.)

Plaintiffs concede that claims for "negligent misrepresentation under New Jersey common law require

11

substantially the same showing of causation as required for a §
10(b) claim, which, under the law of the case, cannot be
satisfied." (Pl.s' Opp. at 4.) See Karu v. Feldman, 119 N.J. 135,
147 (N.J. 1990) ("The aggrieved party must be a reasonably
foreseeable recipient of the company's statements for its proper
business purpose, who relies on the statements, and the
statements must be a proximate cause of the plaintiff's
damages.") (citing Rosenblum v. Adler, 93 N.J. 324 (1983)).
Accordingly, Defendants' motion for summary judgment will be
granted.

**2.   Illinois Consumer Fraud Act**

Andersen, and the other Defendants by incorporation of
Andersen's motion, claim that the absence of loss causation
mandates summary judgment on Plaintiffs' Illinois Consumer Fraud
Act claim. Plaintiffs agree that this is undisputed. (Pl.s' Opp.
at 4.)

Because of Plaintiffs' concession and because Defendants'
argument appears consistent with Illinois law, Martin v. Heinold
Commodities, Inc., 163 Ill. 2d 33, 60-61 (Ill. 1994), Defendants'
motion for summary judgment on the Illinois Consumer Fraud Act
claim is granted. See Id. ("We find Illinois law to be similar to
the analysis used by these Federal courts which require both
transaction causation and loss causation in order to recover for
misrepresentation in securities cases. Thus, plaintiffs here must

12

prove what the Federal courts have termed loss causation prior to any recovery of damages.").

### 3.  **New Jersey Securities Act**

### a.  **Andersen**

Andersen requests summary judgment on Plaintiff's New Jersey Securities Act claim, N.J.S.A. 49:3-71, on the basis that the statute does not apply to accountants. Although Plaintiffs concede that the lack of loss causation entitles Defendants to summary judgment on this claim, Andersen requests summary judgment on the grounds that Andersen is excluded from the coverage of N.J.S.A. 49:3-71. Plaintiffs do not oppose Andersen's argument, other than to contend that it is moot since Andersen is already entitled to summary judgment for lack of loss causation. However, a party cannot force its adversary to raise a particular argument if the party chooses to argue on alternative grounds. Accordingly, this Court will decide Andersen's motion on the basis of its exclusion from the coverage of the statute.

The New Jersey Securities Act applies only to a defendant who "offers, sells, or purchases" securities or "engages in the business of advising others . . . as to the value of securities." N.J.S.A. 49:3-71(a)(5); see Zendell v. Newport Oil Corp., 226 N.J. Super. 431, 440 (App. Div. 1988) (noting that a "buyer does not, in any meaningful sense, 'purchas[e] the security from'" a lawyer or accountant). In defining what constitutes a seller for

13

the purposes of the statute, the Appellate Division of the New Jersey Superior Court employed the standard set forth by the United States Supreme Court in <u>Pinter v. Dahl</u>, 108 S. Ct. 2063 (1988). In applying the <u>Pinter</u> reasoning to the context of N.J.S.A. 49:3-71, the Appellate Division determined that although "[t]he term 'seller' is not limited to an owner who passes title or some other interest in a security to a buyer for value," liability as a seller should be limited "to a broker or other person who successfully solicits the purchase, motivated at least in part by a desire to serve his or her own financial interest or those of the security's owner." <u>Zendell</u>, 226 N.J. Super. at 439-40 (quoting <u>Pinter</u>, 108 S. Ct. 2063).

Andersen's sole involvement with Jasmine securities was the issuance of the 1993 audit report. There is no evidence suggesting that Andersen had a financial investment in Jasmine or was in any way motivated by its own financial interest in soliciting purchases of Jasmine stock. Accordingly, Andersen is not liable under the New Jersey Securities Act. <u>See</u> <u>Id.</u> at 440-41 (affirming summary judgment for Defendant law firm on N.J.S.A. 49:3-71 claim where "no plaintiff had any contact with a member of [Defendant] firm; [firm] was not a general partner in the venture; [firm] never acted as a broker, selling agent or underwriter; and the law firm had no managerial position with or financial investment in the [venture]").

**b.    Remaining Defendants**

The Jasmine Defendants, and the McKowan Defendants by incorporation, move for summary judgment on Plaintiffs' New Jersey Securities Act claim for lack of proximate cause. Plaintiffs concede that the lack of loss causation mandates summary judgment on the New Jersey Securities Act claims, (Pl.s' Opp. at 4), and, therefore, this Court will not address the merits of Defendants' argument.

Accordingly, summary judgment is granted to Andersen on the basis that it is excluded from the scope of the New Jersey Securities Act, and summary judgment is granted to the remaining Defendants who so moved, for lack of proximate cause.

**C.    RICO Claims Addressed in Neither the June 30 Opinion nor Andersen's Motion**

The Jasmine Defendants argue that Plaintiffs' failure to establish loss causation entitles them to summary judgment on Plaintiffs' Federal and New Jersey RICO claims. The McKowan Defendants adopt and incorporate the Jasmine Defendants' arguments. Defendants contend that the Third Circuit equates "loss causation" and "proximate cause," <u>EP Medsystems, Inc. V. Echocath, Inc.</u>, 235 F.3d 865, 883-84 (3d Cir. 2000), and therefore the lack of loss causation renders Plaintiffs unable to establish proximate cause for the purposes of their RICO claims. Plaintiffs respond by incorporating their response to Andersen's motion, which does not address Plaintiffs' RICO claims.

15

Both the Federal and New Jersey RICO claims require Plaintiffs to make a showing of proximate causation. See Maio v. Aetna, Inc., 221 F.3d 472, 482 (3d Cir. 2000) (holding that "injury to business or property" and proximate causation requirements are considered aspects of the plaintiff's 'standing' to sue under section 1964(c) of RICO"); see also Interchange State Bank v. Veglia, 286 N.J. Super. 164, 178 (App. Div. 1995) ("In order to establish standing to institute a civil action under RICO, it must be shown that 'plaintiff's harm was proximately caused by the RICO predicate acts alleged'") (citing First Nationwide Bank v. Gelt Funding Corp., 27 F.3d 763, 769 (2d Cir. 1994)).

Consequently, because Plaintiffs concede that "proximate cause cannot be established," (Pl.s' Opp. at 1), pursuant to this Court's June 30 Opinion, Defendants motion for summary judgment on Plaintiffs' state and federal RICO claims will be granted.

The accompanying Order shall enter today.

Dated:   12/20/05                    S/Robert B. Kugler
                                     ROBERT B. KUGLER
                                     United States District Judge